CITIZENS NATIONAL BANK AND TRUST COMPANY OF FULTON, Respondent, *v.* FIRST TRUST AND DEPOSIT COMPANY OF SYRACUSE, N. Y., and Another, Executors, etc., of FRANK B. DILTS, Deceased, Appellants.

Fourth Department, June 26, 1935.

*A. L. Rice* [*Harry C. Mizen* of counsel], for the appellants.

*George M. Fanning* [*Giles S. Piper* of counsel], for the respondent.

SEARS, P. J.  In July, 1930, Walter Bradley, who is not a party to this action, applied to the plaintiff for a loan of $5,500 and offered as security 100 shares of stock of Draycott Mills, Inc., a corporation engaged in the textile business, the stock of which has never been sold so as to establish a market value.  Bradley was told that if he could furnish the bank a purchaser for the stock, a responsible party, the bank would use the stock as collateral and lend Bradley the money.  On July 21, 1930, the defendants' testator, Frank B. Dilts, wrote the plaintiff as follows: " Upon cancellation of my offer to the Baldwinsville State Bank to purchase Draycott Mills stock held as collateral for two thousand dollar note of Walter Bradley, I will agree to purchase the said one hundred shares of Draycott Mills, common stock (which they now hold), at a price not to exceed $55 per share, provided Walter Bradley is unable to pay a note in the amount of $5,500 given you July 18, 1930.  This offer is limited for five months from this date and will be null and void after December 18, 1930," and the plaintiff replied on the same day, as follows: " Referring to your favor of July 21 and the telephone conversation concerning it in which you make an offer of $55 per share of one hundred shares of Draycott Mills, Inc., stock good until December 18, 1930, Mr. Bradley has paid the two thousand dollars at the State Bank at Baldwinsville and is delivering to you a letter from the State Bank cancelling your offer for this stock at that bank.  We have loaned Mr. Bradley fifty-five hundred dollars until December 15, 1930, secured by a hundred shares of Draycott Mills, Inc., stock referred to, with the understanding that we will be able to sell to you at $55 per share in case he does not pay the obligation.

" We are very glad to be of assistance to Mr. Bradley in his affairs and your offer for the stock creates a market, and I am sure will prove entirely satisfactory to the banking department and the bank examiner.

" Sometimes we have trouble loaning on local stocks on account of lack of market but your letter helps us solve the problem very nicely."

Bradley also wrote to the plaintiff on the same day the following letter: " In consideration of you loaning me $5500 represented by promissory note dated July 18, 1930, for that amount and secured

242

by a hundred shares of capital stock of Draycott Mills, Inc., and in further consideration of a certain letter addressed to you July 21, 1930, and signed by F. B. Dilts agreeing to purchase one hundred shares of Draycott Mills, Inc. (the collateral of said note), at $55 per share, I hereby agree for myself, heirs and assigns, that you are hereby authorized to sell such collateral to F. B. Dilts in accordance with Mr. Dilts' agreement.

" Any wording of the collateral or any law notwithstanding.

" It is my intention that said stock can be sold to Mr. Dilts in case I do not pay the obligation on or before December 18, 1930, without public sale, publication of notice or anything of that nature. Sales to be made by you under those circumstances as if it were your own stock."

On December 12, 1930, Dilts, being in North Carolina, sent the following telegram to the plaintiff:

" CITIZENS NATIONAL BANK AND TRUST COMPANY,
Fulton, New York.

" Will extend Draycott stock option for Walter Bradley until return.

" F. B. DILTS,"

and on December 20, 1930, Dilts sent the plaintiff this letter: " My guarantee of July 21, 1930, having expired, I hereby renew as follows — I agree to purchase from you one hundred shares of Draycott Mills common stock at a price not to exceed $55 per share, provided Walter Bradley is unable to pay a note in the amount of $5500.

" This offer is limited for five months from this date and will be void after May 20."

On December 22, 1930, Bradley's note was renewed so as to fall due on May 15, 1931, in reliance upon the letter of the defendants' testator just quoted.

On May 13, 1931, Dilts wrote the plaintiff again thus: " I hereby agree to extend until July 20, 1931, my offer to purchase one hundred shares of Draycott common stock at $55 per share, the same being collateral for a note of Walter Bradley. This offer is conditional on your not being able to collect payment of note." Bradley's note, in reliance thereon, was renewed so as to fall due on July 15, 1931.

Again, on July 10, 1931, Dilts wrote the plaintiff the following: " I hereby agree to extend until September 20, 1931, my offer to purchase one hundred shares of Draycott Mills common stock at $55 per share, same being collateral for note of Walter Bradley. This offer is conditional on your not being able to collect payment on the note."

The note was renewed again in reliance on Dilts' communication on July 16, 1931, to fall due on September 15, 1931. Nothing has been paid upon the note.

On September 15, 1931, Dilts was very ill, and on the seventeenth of September he died. His will was probated and letters testamentary issued to the defendants on September 26, 1931.

In January, 1932, the plaintiff's president talked with an officer of the defendant bank and asked him if the executors " would take up the claim " respecting the Draycott Mills stock, or wanted the plaintiff to file a claim in respect to it, and offered to turn over the stock to the defendants. Later the plaintiff's president saw another officer of the defendant bank, but the defendants did not " take up the stock," and on March 26, 1932, the plaintiff filed a claim against the estate in which it was stated that Dilts agreed in the event of Bradley being unable to pay a note of $5,500 to purchase 100 shares of the Draycott Mills common stock at a price not to exceed $55 a share; that the note was due September 15, 1931; that the testator and his estate had failed and neglected to purchase the stock, and that the plaintiff demanded the payment of $5,500 and offered to deliver the certificates for the stock on receipt of that amount. The claim was rejected. No other demand upon Dilts or his executors has been made and no acceptance of Dilts' offer to purchase was ever communicated to Dilts or his executors.

Plaintiff contends, and the trial court has found, that these communications embody a contract between the plaintiff and Dilts for the sale and purchase of the shares of stock.

It is quite possible that such was the intention, but the form of the communications passing between the plaintiff and Dilts does not make out such a contract. To make a contract there must be an offer and an acceptance. There was an offer repeatedly renewed. There was a consideration for keeping this offer open to the times specified; there was, however, no acceptance by the plaintiff of the offer at any time within the expressed periods. The instruments are consistent only with an intention that an option is given by Dilts to the plaintiff which is, of course, an offer which the offerer has contracted to keep open for the stated period. It is hard to see why the definite limiting periods for the keeping open of the offer were specified in each of the letters of Dilts if the parties had agreed to a sale subject only to a condition subsequent of cancellation in case of Bradley's payment of the note. Should it be urged by the plaintiff that these periods merely fixed a limit upon maturity date of the note and its extensions, it must be answered that while that may have been

the unexpressed intention, the expressed intention is of a limitation of time to accept the offer or option. The letter of the plaintiff to Dilts in which the plaintiff states that this " creates a market " is entirely inconsistent with the theory of a sale or an agreement to sell as urged by the plaintiff.

The death of defendants' testator three days before the end of the last option period left no one until the issuance of letters testamentary occurred to whom the plaintiff could have communicated its acceptance of the offer to purchase. If we assume, in consequence of these facts, that there was an extension period until such reasonable time as the plaintiff could have had an opportunity to notify the defendants of its acceptance of the testator's offer, still such reasonable extended period of time expired long before January, 1932, when the plaintiff so far as appears first communicated with the defendants. As has been said, we feel compelled to construe the language of the letters in accordance with the accepted legal significance of the terms used, and cannot render a judgment upon a surmise of what may have been intended.

We, therefore, conclude that the judgment should be reversed on the law, with costs, and the complaint dismissed, with costs.

All concur, except CROSBY, J, not voting. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ

Judgment reversed on the law, with costs, and complaint dismissed, with costs.